IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SALVADOR P. RENTERIA III, D.O., | 05-CV-392-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| J. RODRIGO OYARZUN, M.D., and GOOD SAMARITAN REGIONAL MEDICAL CENTER, | |
| Defendants. | |

**FERNANDO V. HERNANDEZ**
Hernandez Law Firm
46 South First Street
San Jose, CA  95113-2406
(408) 280-5800

    Attorney for Plaintiff

1 - OPINION AND ORDER

**ROBERT M. KEATING**
**MOLLY K. MARCUM**
**DEVON ZASTROW NEWMAN**
Keating Jones Bildstein & Hughes, P.C.
One S.W. Columbia
Suite 800
Portland, OR  97258-2095
(503) 222-9955

    Attorneys for Defendants

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion to Strike or Exclude Evidence Attached to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (#157) and Defendants' Motion for Summary Judgment, or, in the Alternative, Motion for Partial Summary Judgment (#126).  For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Strike and **GRANTS** Defendants' Motion for Summary Judgment.

## FACTUAL BACKGROUND

Plaintiff Salvador P. Renteria, M.D., worked as a cardiothoracic surgeon with the Starr-Wood Cardiac Group in Corvallis, Oregon, from December 2001 to August 2002.  Defendant Good Samaritan Regional Medical Center bought Starr-Wood Cardiac Group in early 2003.  Defendant Rodrigo Oyarzun, M.D., has worked as a cardiothoracic surgeon at Starr-Wood Cardiac Group and Good Samaritan Regional Medical Center since 2000 and has been the

Chief of Cardiothoracic Surgery at Good Samaritan since 2003.

Plaintiff moved to California in January 2003 and applied for hospital privileges as a cardiac surgeon at the San Jose Medical Center (SJMC) and the San Jose Regional Medical Center (SJRMC) in March 2003.  On April 7, 2003, the Medical Staff Services Department of SJMC and SJRMC sent a letter to Good Samaritan requesting information about Plaintiff in connection with his application.  Thereafter, James Hinsdale, M.D., Chief of Staff and Chair of the Medical Executive Committee at SJMC called Dr. Oyarzun about Plaintiff.  On July 31, 2003, Dr. Hinsdale wrote Dr. Oyarzun asking for a written evaluation of Plaintiff's clinical and professional performance to assist in assessing Plaintiff's qualifications.  On August 8, 2003, Dr. Oyarzun sent a response to Dr. Hinsdale's request.

While waiting for a decision on his application for hospital privileges, Plaintiff became aware of Dr. Oyarzun's August 8, 2003, letter.  Plaintiff retained an attorney to represent his interests because Plaintiff believed Dr. Oyarzun's letter delayed the processing of Plaintiff's application.  On October 13, 2003; October 28, 2003; and November 6, 2003, Plaintiff's counsel wrote letters to Dr. Oyarzun in which he advised that Plaintiff was aware of the August 8, 2003, letter and believed it contained false statements.  Counsel set out the statements that Plaintiff believed were defamatory and threatened litigation if Dr. Oyarzun

3 - OPINION AND ORDER

did not retract them.

On March 19, 2004, SJMC denied Plaintiff's application for hospital privileges.[1]  On April 21, 2004, SJMC sent Plaintiff copies of his file and documents related to SJMC's decision.

## PROCEDURAL BACKGROUND

On March 22, 2005, Plaintiff filed an action in this Court against Good Samaritan; Dr. Oyarzun; Thomas Maker, M.D.; and Roger Dreiling, M.D., alleging slander and libel, intentional interference with prospective economic advantage, and unfair business practices.

On January 23, 2006, the Court granted the Motion to Dismiss of Defendants Marker and Dreiling on the ground that Plaintiff had not properly served them.  Plaintiff then filed an Amended Complaint against Dr. Oyarzun and Good Samaritan alleging slander and libel and intentional interference with prospective economic advantage.

On December 18, 2006, Defendants filed a Motion for Summary Judgment on the grounds that (1) Plaintiff's claim for libel and slander are barred by the statute of limitations, (2) Plaintiff's claim that Dr. Oyarzun illegally changed the names of doctors on patient charts is barred by the statute of limitations, and

---

[1] Plaintiff was ultimately granted hospital privileges at SJRMC.

4 - OPINION AND ORDER

(3) Plaintiff's claim for prospective interference with economic relations is not supported by any admissible evidence in the record.

On February 6, 2007, Defendants filed a Motion to Strike several of the exhibits that Plaintiff filed in support of his Response to Defendants' Motion for Summary Judgment on the ground that the exhibits were absolutely privileged and inadmissible pursuant to Oregon Revised Statutes § 41.675.

## **DEFENDANTS' MOTION TO STRIKE**

Defendants move to strike Plaintiff's Exhibits 5, 8-11, 15-16, and 18-19 on the ground that they are "peer review data" and, therefore, absolutely privileged and inadmissible in any proceeding pursuant to Oregon Revised Statues § 41.675(3).  In addition, Defendants assert in a footnote that Plaintiff's Exhibits 2-3, 6, and 17 are deposition transcripts that do not contain a certification by the court reporter.

**I.   Exhibits 2-3, 6, and 17**

Exhibits 2-3, 6, and 17 each include the cover page of the deposition identifying the deponent, the action, and the time and place of the deposition.  Plaintiff's counsel, Fernando Hernandez, attests in his Affidavit that the excerpts are true copies of selected portions of the various deposition transcripts.

5 - OPINION AND ORDER

Defendants assert the excerpts are not properly authenticated because they do not include a copy of the court reporter's certification.

In *Orr v. Bank of America*, the Ninth Circuit upheld the district court's exclusion of deposition excerpts that lacked the court reporter's certification and that also failed to identify the deponent or the action. The court held:

> A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent.

285 F.3d 764, 774 (9th Cir. 2002). The court, however, did not find a court reporter's certification is the only method of authenticating a deposition excerpt. Under Federal Rule of Evidence 901(b)(4), the excerpts may also be authenticated by reviewing their contents. Authentication is accomplished "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Defendant has not submitted any evidence to show that the excerpts are fraudulent. In the absence of any evidence to the contrary, the Court concludes Plaintiff has submitted sufficient evidence to establish the deposition excerpts are authentic.

Accordingly, the Court denies Defendants' Motion to Strike with respect to Exhibits 2-3, 6, and 17.

6 - OPINION AND ORDER

**II.  Exhibits 5, 8-11, 15-16, and 18-19**

Defendants move to strike Exhibits 5, 8-11, 15-16, and 18-19 on the ground that they constitute peer-review data and, therefore, are absolutely privileged and inadmissible in any proceeding pursuant to Oregon Revised Statute § 41.675(3). Plaintiff, however, contends these documents were not part of the peer-review process because Dr. Hinsdale was not part of the review committee, and, therefore, these exhibits are not absolutely privileged or inadmissable.

Federal Rule of Evidence 501 provides in pertinent part:

> [I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

In his Complaint, Plaintiff brings state-law claims for defamation and intentional interference with prospective economic relations.  Pursuant to Rule 501, therefore, the Court will apply Oregon law to determine whether the documents at issue are privileged and inadmissible.

Oregon Revised Statutes § 41.675(3) provides in pertinent part:  "All data shall be privileged and shall not be admissible in evidence in any judicial, administrative, arbitration or mediation proceeding."  Section 41.675(2) defines data as

> all oral communications or written reports to a peer review body, and all notes or records created by or at the direction of a peer review body,

7 - OPINION AND ORDER

> including the communications, reports, notes or records created in the course of an investigation undertaken at the direction of a peer review body.

Section 41.675(1) defines a peer-review body as including

> tissue committees, governing bodies or committees including medical staff committees of a health care facility . . ., medical staff committees . . . of professional societies, . . . or any other medical group or provider of medical services in connection with bona fide medical research, quality assurance, utilization review, credentialing, education, training, supervision or discipline of physicians . . . or in connection with the grant, denial, restriction or termination of clinical privileges at a health care facility. "Peer review body" also includes utilization review and peer review organizations.

Plaintiffs' Exhibit 5 is a letter from Debbie Dragich, Medical Staff Coordinator of Good Samaritan Health Services, to SJMC regarding its request for verification of hospital privileges for Plaintiff.  Exhibits 8-11 are letters and references addressed to Dr. Hinsdale as Chief of Staff at SJMC and to Medical Staff Services at SJMC relating to Plaintiff's application and qualification for privileges.  Exhibit 15 is a summary of the SJMC Credentials Committee meeting with Plaintiff.  Exhibit 16 is a letter to Plaintiff advising that the Credentials Committee denied his application for hospital privileges.  Exhibit 18 is a Peer Review/Health Facility Reporting Form related to the denial of Plaintiff's application for privileges, which was required to be filled out by § 805 of the California Business Code.  Finally, Exhibit 19 is an Adverse Action Report

8 - OPINION AND ORDER

for the National Practitioner Data Bank regarding SJMC's denial of Plaintiff's request for hospital privileges.

Plaintiff contends these materials are not protected by the absolute-immunity provision of § 41.675 because Dr. Hinsdale was not a member of the peer-review committee. Dr. Hinsdale, however, testified at his deposition that he was Chair of the Medical Executive Committee at SJMC and, as Plaintiff testified at his deposition, the Medical Executive Committee generally received recommendations from the Credentials Committee and then made a recommendation to the hospital's Board of Trustees as to whether to credential an applicant. In addition, when Dr. Hinsdale wrote Dr. Oyarzun a letter requesting further information about Plaintiff's credentials, he did so on SJMC letterhead as Chief of Staff and Chair of the Medical Executive Committee participating in the credentialing procedure.

The Court concludes on this record that Dr. Hinsdale was acting as a participant in the credentialing process. Thus, Plaintiff's Exhibits 5, 8-11, 15-16, and 18-19 constitute peer-review data within the meaning of § 41.675 and are absolutely privileged and inadmissible in this proceeding.

Accordingly, the Court grants Defendants' Motion to Strike with respect to Plaintiff's Exhibits 5, 8-11, 15-16, and 18-19.

9 - OPINION AND ORDER

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants move for summary judgment on Plaintiff's claims for libel and slander and on Plaintiff's claim that Dr. Oyarzun changed the name of the attending physician on patients' charts on the ground that these claims are barred by the statute of limitations. Defendants also move for summary judgment on Plaintiff's claim for intentional interference with prospective economic advantage on the ground that Plaintiff has not produced any admissible evidence that Defendants interfered with a prospective economic advantage by wrongful means.

## Standards

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in

10 - OPINION AND ORDER

favor of the nonmoving party. *Id*. "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936*, 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## Discussion

### I. Plaintiff's Claims for Libel and Slander

Plaintiff alleges Dr. Oyarzun's August 8, 2003, letter to Dr. Hinsdale contained numerous false statements relating to Plaintiff; Dr. Oyarzun knew these statements were false; and as a result of these false statements, SJMC denied Plaintiff hospital

11 - OPINION AND ORDER

privileges.

The parties and the Court agree the Court should apply Oregon law to Plaintiff's claims. Accordingly, the Court applies Oregon law to Plaintiff's claims.

The statute of limitations for defamation is one year and generally begins to run on the date the statement is made or published. *Kraemer v. Harding*, 159 Or. App. 90, 103-04 (1999). When a document containing defamatory statements is confidential, the statute of limitations is tolled until a plaintiff learns or reasonably should have learned of the existence of the document containing the defamatory statements. *White v. Gurnsey*, 48 Or. App. 931, 935 (1980). Physical possession of the document is not required for the statute of limitations to begin running. *Id*. at 937.

Plaintiff contends he did not see Dr. Oyarzun's August 8, 2003, letter until late April 2004. In October 2003, however, Plaintiff's counsel sent Dr. Oyarzun two letters in which counsel informed him:

> [Plaintiff] was told that you had personally written a letter denouncing my client and making 5 false and derogatory statements about his professional work. Each of these falsehoods is actionable as libel, and are slanderous. These statements made by you were . . .:
>
> 1.   That his divorce and attendant problems had "clouded his judgment in the operating room."
> 2.   That he did not get along with the physician assistants.

12 - OPINION AND ORDER

>    3.   That he did not get along with the
>         anesthesiologists.
>    4.   That he did not get along with the scrub
>         nurses.
>    5.   That he was continually late to the ICU.
>
>                     * * *
>
>    You have only one avenue open to you, and that is
>    to recant and correct the false statements that
>    you made and to send me a copy of both letters.
>
>    The alternative is a claim for damages of a very
>    substantial amount to be filed against you.

Marcum Aff., Exs. 9 and 10.  Even if Plaintiff did not actually see Dr. Oyarzun's letter until April 2004, these letters establish Plaintiff was aware of the letter by October 2003, knew it contained the identified statements, and believed these statements were actionable as libel and slander.  The statements in Dr. Oyarzun's August 8, 2003, letter are the foundation of Plaintiff's defamation claim.  Plaintiff, however, did not file this action until March 22, 2005, which was 17 months after Plaintiff learned about Dr. Oyarzun's letter.

In addition, even if the October 2003 letters were not sufficient to establish that Plaintiff knew about Dr. Oyarzun's August 8, 2003, letter and its contents, Plaintiff testified at his deposition during an action he brought against Dr. Hinsdale in California state court that he saw Dr. Oyarzun's August 8, 2003, letter and read it during his interview at SJMC in January 2004.

Based on this record, the Court finds Plaintiff discovered

13 - OPINION AND ORDER

the contents of Dr. Oyarzun's August 8, 2003, letter by January 2004 at the latest, which is more than a year before Plaintiff filed this action.

Accordingly, the Court concludes Plaintiff's libel and slander claims are barred by Oregon's one-year statute of limitations, and the Court, therefore, grants Defendants' Motion for Summary Judgment as to these claims.

### III. Plaintiff's Claim that Dr. Oyarzun Illegally Changed the Name of the Attending Physician in Patient Charts

Plaintiff asserts in 2002 and 2003 Dr. Oyarzun illegally changed the name of the attending physician and surgeon in his patient charts to Plaintiff's name when those patients died or experienced complications, which made Plaintiff's mortality and complication rate appear higher than it actually was.

Oregon Revised Statutes § 12.110(1) provides:

> An action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit.

Plaintiff testified at his deposition that he learned Dr. Oyarzun allegedly was changing the name of the attending physician on patient charts while Plaintiff was doing rounds at Good Samaritan. Plaintiff stopped working at Good Samaritan in August 2002. Plaintiff, therefore, was aware of the alleged

14 - OPINION AND ORDER

altering of patient charts at least 2½ years before he filed this action.

Accordingly, the Court concludes Plaintiff's claim based on Dr. Oyarzun altering patient medical charts is barred by the statute of limitations, and the Court, therefore, grants Defendants' Motion for Summary Judgment as to this claim.

## IV.   Plaintiff's Claim for Intentional Interference with Prospective Economic Advantage

The elements of the tort of intentional interference with prospective economic advantage are:

> (1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage); (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and (6) damages.

*Allen v. Hall*, 328 Or. 276, 281 (1999)(citations omitted).

Plaintiff contends Defendants interfered with his prospective relationship with SJMC and other hospitals through improper means and with an improper purpose as follows:

> [Defendants] made false and misleading statements between August 2003 and March 20, 2004 to the various committees reviewing plaintiff's application for privileges at [SJMC] and [SJRMC] and between June 2003 and January 2006 to hospitals to which plaintiff had applied for privileges all with the intent of denying plaintiff privileges as a cardiothoracic surgeon at said facilities.

Pl.'s First Am. Compl. ¶ 23.  To establish his claim for

15 - OPINION AND ORDER

intentional interference with prospective economic advantage, however, Plaintiff relies on exhibits that were stricken earlier. Thus, Plaintiff has not submitted any admissible evidence to support this claim.

Based on this record, the Court, therefore, grants Defendants' Motion for Summary Judgment as to this claim.

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Strike (#157) and **GRANTS** Defendants' Motion for Summary Judgment (#126).

IT IS SO ORDERED.

DATED this 23rd day of April, 2007.

/s/ Anna J. Brown
ANNA J. BROWN
United States District Judge

16 - OPINION AND ORDER